UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James A. Pacheco, | |
|    *Plaintiff*, | |
| v. | No. 13 CV 5272 |
| City of Joliet, a municipal corporation, Officer Adam Stapleton (Star No. 286), Officer Eric Zettergren (Star No. 339), | Judge Lindsay C. Jenkins |
|    *Defendants.* | |

MEMORANDUM OPINION AND ORDER

In July 2012 Officers Stapleton and Zettergren of the Joliet Police Department attempted to pull over James Pacheco. The parties' stories of what happened next diverge, but all seem to agree that Officer Stapleton eventually exited his squad car and shot Pacheco multiple times while Pacheco was still in his vehicle. Pacheco then fled the scene. The officers pursued him until he crashed into a traffic light pole, where Officer Stapleton then deployed his taser and apprehended Pacheco. These events led a jury to convict Pacheco of aggravated assault with a motor vehicle.

Pacheco filed this suit in 2013 bringing several claims under 42 U.S.C. § 1983 and Illinois law, based both on the shooting and the tasing. Defendants move for partial summary judgment, asserting that the Supreme Court's decision in *Heck v. Humphrey* bars Pacheco's shooting-related claims. See 512 U.S. 477 (1994).

I.    Background

   A.    Facts

The parties tell two very different versions of events leading up to the shooting. The officers describe a high-speed pursuit that culminated with Pacheco accelerating his vehicle directly toward them as they stood outside their squad car. Pacheco, on the other hand, says he did not speed or intentionally elude police, and that he never accelerated toward or posed a threat to either officer. If his car moved at all, he explains, it was "barely or slowly moving." [Dkt. 204, ¶ 2.][1] Because at summary judgment the court must view the facts in the light most favorable to the nonmoving

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

party, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), Pacheco's version (to the extent it's supported by evidence) governs.

In the early morning hours of July 30, 2012, Officers Stapleton and Zettergren of the Joliet Police Department were on patrol in a marked squad car when a dispatcher informed them of a complaint that a suspect had just broken the windows of a vehicle. [Dkt. 201, ¶¶ 8–10.] The suspect, the dispatcher continued, was driving a black Nissan. [*Id.*, ¶ 10.] Officer Stapleton drove to the scene of the crime with Officer Zettergren in the passenger seat. [*Id.*, ¶ 11.] They observed a black Nissan that matched the description provided in the dispatch report. [*Id.*] The driver of the Nissan was the plaintiff in this case, James Pacheco. [*Id.*]

Upon seeing the Nissan, the officers activated their emergency lights and Pacheco stopped his vehicle. [*Id.*, ¶ 12.] According to the officers, as soon as they exited the squad car, Pacheco fled. [Dkt. 193, ¶ 12.] Pacheco, however, asserts that he did not flee. In fact, he had no idea the squad car was following him, and he broke no traffic laws during the alleged pursuit. [Dkt. 201, ¶ 13; Dkt. 193-1 at 258–63, 278–79.] It wasn't until he reached a railroad crossing and attempted to execute a U-turn to avoid waiting on a slow-passing train that he noticed Officers Stapleton and Zettergren behind him with their emergency lights on. [Dkt. 193-1 at 262–63.]

Both officers exited the squad car. [Dkt. 201, ¶ 16.] Officer Stapleton stood on the driver's side of the squad car, near the trunk, which offered some protection between himself and the Nissan. [*Id.*; Dkt. 204, ¶ 6.] And Officer Zettergren stood inside the front passenger's door. [Dkt. 201, ¶ 16.]

Pacheco placed his foot on the brakes, rolled down his window, and asked the officers why they were pulling him over. [Dkt. 204, ¶ 1.] At the time, his vehicle was "stationary or barely or slowly moving." [*Id.*, ¶ 2.] The squad car was parked at a parallel angle to his Nissan, and during his deposition Pacheco explained that he "was trying to go in between [a] semi-truck and the police cruiser." [*Id.*, ¶ 3; 193-1 at 297.]

Pacheco posed no danger or threat of danger to either officer. [Dkt. 201, ¶ 6.] Indeed, he intended to comply with the officers' commands and had "taken steps to do so." [Dkt. 204, ¶ 14.] Yet Officer Stapleton began to move backward, away from the "approaching Nissan," which was just "rolling forward." [*Id.*, ¶ 7.] Once the Nissan was located "alongside" him, Stapleton fired shots at it over the trunk of the squad car. [*Id.*, ¶ 8.] Officer Stapleton was "moving back and away from the Nissan as he fired the shots." [*Id.*, ¶ 9.] He aimed for Pacheco's head and chest. [*Id.*, ¶ 11.] And an examination of the Nissan after the shooting revealed seven bullet holes in the windshield, five on the passenger side, one in the center, and one on the driver's side. [*Id.*, ¶ 12; Dkt. 193-2 at 96–98.] Five of the seven shots struck Pacheco. [Dkt. 201, ¶ 23.]

After the shooting, Pacheco fled the scene to avoid being shot again and "to see his kids before he died." [Dkt. 204, ¶ 15.]

B.  **Procedural History**

About a year after the shooting, in July 2013, Pacheco filed this suit bringing several claims under 42 U.S.C. § 1983 and Illinois law. Pacheco's amended complaint raises three § 1983 counts: a Fourth Amendment excessive force claim (Count One); a failure to intervene claim (Count Two); and a due process claim (Count Three). [Dkt. 83.] He also raises state law claims for battery (Count Four); intentional infliction of emotional distress (Count Five); malicious prosecution (Count Six); and *respondeat superior* and indemnification (Counts Seven and Eight). [*Id.*] The malicious prosecution claim was dismissed without objection in 2017, and the court granted Defendants' motion to dismiss the due process claim in 2018 on *Heck* grounds. [Dkts. 87, 101.]

Because Pacheco faced state criminal charges related to his conduct on the night of the shooting, the court stayed proceedings in the case pending finality of the state criminal proceedings. [Dkt. 158 at 3.] Relevant here, a jury convicted Pacheco of aggravated assault with a motor vehicle stemming from his actions just prior to the shooting. [Dkt. 201, ¶ 26.] After multiple rounds of appeals, that conviction is now final. [*Id.*, ¶ 29.]

Defendants now seek partial summary judgment on Pacheco's remaining claims to the extent they are premised on the shooting.

II.  **Analysis**

Pacheco urges the court to deny Defendants' motion for summary judgment because a reasonable juror could find that Officer Stapleton exercised excessive force by shooting at him seven times while he sat in his unmoving car and posed no threat to the officers. Fair enough.

But that's not the end of the matter. Accepting Pacheco's telling of how the shooting unfolded also means that no reasonable juror could find he committed aggravated assault with a motor vehicle. Therein lies the problem: a finding that the officers violated the Fourth Amendment (or state law) based on Pacheco's factual allegations concerning the shooting would no doubt invalidate his aggravated assault conviction. So a straightforward application of the Supreme Court's decision in *Heck v. Humphrey* warrants summary judgment in favor of Defendants. 512 U.S. 477.

*Heck* "forecloses civil litigation that would call into question the validity of a state criminal conviction or sentence that has not been set aside." *Courtney v. Butler*, 66 F.4th 1043, 1046 (7th Cir. 2023). To determine *Heck's* applicability, then, a court considers whether the factual allegations in a plaintiff's complaint are consistent with his state conviction. See *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014).

3

A jury convicted Pacheco of aggravated assault with a motor vehicle under 720 ILCS 5/12-2(c)(8). That statute applies when an individual "without justification operates a motor vehicle in a manner which places a person [] in reasonable apprehension of being struck by the moving motor vehicle." 720 ILCS 5/12-2(c)(8).

In support of his shooting-related claims, Pacheco maintains that his Nissan was either stationary or barely moving when Officer Stapleton fired seven shots through his windshield. He also testified that he never accelerated toward either officer and, instead, had planned to drive through a gap between the squad car and a semi-truck parked nearby. According to Pacheco, moreover, Officer Stapleton stood behind the trunk of his squad car, offering some protection from the Nissan. In short, Pacheco says that he "posed no danger or threat of danger to either officer." [Dkt. 201, ¶ 6.]

Applying *Heck*, the court now considers whether the factual allegations underlying Pacheco's shooting-related claims are consistent with his aggravated assault conviction. See *Helman*, 742 F.3d at 762; see also *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) ("But if the plaintiff's factual claims in the civil suit necessarily imply the invalidity of the criminal conviction, then *Heck* bars the civil suit."). The answer is no. If a jury accepted Pacheco's allegations that he never drove toward or posed a threat of danger to Officers Stapleton or Zettergren, then the jury could not also find that he operated his Nissan in a way that placed the officers in reasonable apprehension of being struck by the vehicle.

Pacheco's unwavering insistence that he posed no threat to the officers is important. If Pacheco, for example, maintained that he originally accelerated toward the officers but then exited his vehicle with his arms above his head *and then* Officer Stapleton fired seven shots at him, the result would be different. In that circumstance, a jury could find *both* that the initial acceleration toward the officers constituted aggravated assault *and* that firing seven shots after Pacheco stopped and surrendered constituted excessive force. Compare *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (holding that *Heck* did not bar plaintiff, who was convicted of resisting arrest, from bringing a Fourth Amendment excessive force claim because a jury could find *both* that plaintiff resisted arrest *and* that the officers exercised unreasonable force in effectuating the arrest), with *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (applying *Heck* to plaintiff's suit seeking the return of gems and cash seized during a search of his home because plaintiff's theory—that police seized gems and cash but not drugs—was inconsistent with his conviction for drug violations); see also *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (holding that *Heck* did not bar plaintiff, who had been convicted of resisting an officer, from bringing an excessive force suit where he did "not collaterally attack his conviction, deny that he resisted [the officer's] order to comply with the blood draw, or challenge the factual basis presented at his change of plea hearing").

4

The same would be true if Pacheco "had conceded that he voluntarily and intentionally or knowingly drove towards the officers, or [] had even remained agnostic" on the issue. *Tolliver*, 820 F.3d at 244. There too a jury could find *both* that Pacheco committed aggravated assault with a motor vehicle *and* that Officer Stapleton's exercise of lethal force was unreasonable.

But Pacheco offers no such theory. See *McCann v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006) (explaining that *Heck* requires courts to determine whether plaintiff's factual allegations imply the invalidity of his conviction, not whether plaintiff could have hypothetically steered clear of *Heck*). His version of events and sole theory of the case—that he never drove toward or posed a threat to either officer—is entirely inconsistent with his aggravated assault conviction. Cf *Douglas v. Vill. of Palatine*, 2020 WL 1469439, at *4 (N.D. Ill. Mar. 26, 2020) (explaining that a plaintiff's allegations that a police officer shot him while he posed no threat were incompatible with his conviction for aggravated assault). By its very terms, Pacheco's conviction for aggravated assault required the jury to find that he placed the officers in reasonable apprehension (or threat) of danger. So *Heck* precludes Pacheco's shooting-related Fourth Amendment claim, along with his state law claims grounded in the shooting (failure to intervene, battery, and intentional infliction of emotional distress).[2]

### III. Conclusion

For these reasons, the court grants summary judgment in favor of Defendants on Pacheco's shooting-related claims only.

Enter: 13-cv-5272
Date: October 31, 2025

_____
Lindsay C. Jenkins

---

[2] Pacheco may still proceed on these state law claims insofar as they are grounded in the tasing.